UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE LYNN PINKOWSKI,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00173 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Michelle Lynn Pinkowski ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 15). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 11) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on February 23, 2015. (Dkt. 6 at 14).[1] In her application, Plaintiff alleged disability beginning June 15, 2010, due to "mental conditions," panic, anxiety disorder, depression, and hepatitis C. (*Id*. at 14, 166, 170). Plaintiff's application was initially denied on April 3, 2015. (*Id*. at 14, 97-99). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") David J. Begley on August 25, 2017. (*Id*. at 14, 34-80, 103-107). Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Falls Church, Virginia. (*Id*. at 14, 34). On January 22, 2018, the ALJ issued an unfavorable decision. (*Id*. at 11-30). Plaintiff requested Appeals Council review; her request was denied on December 13, 2018, making the ALJ's determination the Commissioner's final decision. (*Id*. at 6-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since February 23, 2015, the application date.  (Dkt. 6 at 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "psychiatric disorders alternatively diagnosed as anxiety, depression, and polysubstance abuse (in current remission)" and cervicalgia.  (*Id*.).  The ALJ further found that Plaintiff's medically determinable impairments of "untreated hepatitis C" and "self-reported post-traumatic stress disorder (PTSD), obsessive compulsive disorder (OCD) and bipolar disorder" were nonsevere.  (*Id*. at 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*.).  The ALJ particularly considered the criteria of Listings 1.04, 12.04, and 12.06 in reaching his conclusion.  (*Id*. at 17-19).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that:

> [Plaintiff] is limited to simple, routine, and repetitive tasks.  She is limited to work in a low stress job, defined as being free of fast-paced production requirements, no hazardous conditions and only occasional decision making required, only occasional changes in the work setting, with only occasional interaction with coworkers and supervisors, no tandem tasks, and only occasional interaction with the general public.

(*Id*. at 19).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id*. at 24).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist

in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of night cleaner, laundry article sorter, and garment sorter. (*Id.* at 25). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 26).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alterative, remand this matter to the Commissioner, arguing the ALJ's assessment of Plaintiff's physical RFC was not supported by substantial evidence. (*See* Dkt. 11-1). The Court finds this argument without merit, for the reasons discussed below.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An RFC represents "the most work a claimant can still do despite limitations from an impairment and/or its related symptoms." *Farnham v. Astrue*, 832 F. Supp. 2d 243, 263 (W.D.N.Y. 2011) (citing 20 C.F.R. § 416.945(a)). "An RFC finding will be upheld when it is supported by 'substantial evidence' in the record." *Rapaport v. Commissioner*, No. 16-CV-2617 (VSB)(JCF), 2018 WL 3122056, at *4 (S.D.N.Y. June 26, 2018) (citing *Goodale v. Astrue*, 32 F. Supp. 3d 345, 356 (N.D.N.Y. 2012)).

Here, the ALJ concluded that Plaintiff was capable of performing light work, relying in part on the opinion of consultative examiner Dr. Samuel Balderman. Dr. Balderman examined Plaintiff on May 21, 2015, and noted that Plaintiff complained of intermittent moderate spine pain. (Dkt. 6 at 375). On examination, Plaintiff was in no acute distress

and had normal gait. (*Id.* at 376). She could walk on her heels, but not her toes, and could perform a full squat. (*Id.*). She used no assistive devices, was able to rise from a chair without difficulty, and required no help changing for the exam or getting on or off the exam table. (*Id.*). Plaintiff had full flexion, extension, and bilateral rotary movement in her cervical spine, and her lumbar spine showed flexion to 70 degrees with full lateral flexion and rotary movement bilaterally. (*Id.* at 377). Plaintiff's right shoulder abduction was limited to 100 degrees, but she had a full range of motion in her left shoulder, elbows, forearms, wrists, hips, knees, and ankles. (*Id.*). Plaintiff had 5/5 strength in her lower and upper extremities, as well as intact hand and finger dexterity and 5/5 grip strength bilaterally. (*Id.*). Based on his examination, Dr. Balderman concluded that Plaintiff had a "mild limitation for repetitive bending and lifting" and a "moderate limitation in reaching, pushing, and pulling due to right shoulder pain." (*Id.* at 378). The record contained no other opinion evidence as to Plaintiff's physical functioning.

In assessing Plaintiff's physical RFC, the ALJ gave "some weight" to Dr. Balderman's opinion. (*Id.* at 23). However, he specifically gave "little weight" to Dr. Balderman's opinion that Plaintiff had moderate limitations in reaching, pushing, and pulling, explaining that "such restrictions are not supported by the benign diagnostic findings, ongoing treatment records showing normal physical exams, and no continued care regarding any physical abnormalities." (*Id.* at 23-24). The ALJ concluded that Plaintiff's impairments "reduced [Plaintiff] to a light residual functional capacity," but explained that "this restriction resolves doubt significantly in favor of [Plaintiff]."

Plaintiff argues that the ALJ's assessment of her physical RFC was unsupported by

substantial evidence, contending particularly that: (1) the ALJ improperly gave little weight to Dr. Balderman's opinion regarding her ability to reach, push, and pull; (2) having rejected this portion of Dr. Balderman's opinion, the ALJ assessed Plaintiff's physical RFC based solely on his own lay opinion; and (3) Dr. Balderman's opinion does not provide substantial evidence for the conclusion that Plaintiff could perform the walking, sitting, or standing requirements of light work. (Dkt. 11-1 at 11-17). The Court considers each of these contentions below.

A.   **Consideration of Dr. Balderman's Opinion**

As a threshold matter, the Court notes that even if the ALJ erred in affording little weight to Dr. Balderman's opinion regarding her ability to reach, push, and pull, any such error was harmless because the ALJ ultimately limited Plaintiff to light work. "[M]oderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work." Gurney v. Colvin, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding opinion of moderate limitations in "heavy lifting, bending, reaching, pushing, pulling, or carrying" consistent with RFC assessment for light work); *see also Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) ("[P]ostural limitations of moderate or lesser severity are generally considered consistent with the demands of light work."). In other words, even though the ALJ stated that he gave little weight to portions of Dr. Balderman's opinion, his RFC determination ultimately was fully consistent with Dr. Balderman's assessment.

Moreover, the Court does not find that the ALJ erred in his assessment of Dr. Balderman's opinion. Dr. Balderman was a consultative examiner and so his opinion was

not entitled to any particular weight; instead, the ALJ was "free to disregard identified limitations . . . not supported by the evidence of record." *Torbicki v. Berryhill*, No. 17-CV-386(MAT), 2018 WL 3751290, at *5 (W.D.N.Y. Aug. 8, 2018). In this case, the ALJ appropriately explained that Dr. Balderman's opinion regarding Plaintiff's ability to push, pull, and reach was not supported by the medical evidence, which showed that "even when presenting for care directly related to her alleged back issues, [Plaintiff] was consistently noted to exhibit no functional deficits." (Dkt. 6 at 21 (referencing *id*. at 570 (Plaintiff was seen in emergency department for complaints of pain in back and chest and was noted to have no functional deficits); *id*. at 576 (Plaintiff presented in emergency department for pain and cough and was noted to be in good condition and have no functional deficits)); *see also id*. at 561 (Plaintiff complained of back pain but had normal range of motion in her spine, normal spinal alignment, negative straight left raising tests on both sides, and intact range of motion in all extremities); *id.* at 329 (spinal x-ray performed on May 27, 2015, showing "[n]o significant bony abnormality"); *id*. at 390 (MRI performed on April 29, 2015, showing only minor abnormalities)).

Plaintiff argues the ALJ cherry-picked the evidence and improperly relied on a gap in her treatment records to discount Dr. Balderman's opinion. Plaintiff claims that "the ALJ improperly inferred she was not receiving treatment for her physical impairments based on the absence of treatment notes in the record." (Dkt. 11-1 at 11). However, the ALJ did not find that Plaintiff had not received any treatment for her physical impairments. The ALJ noted that Plaintiff had received treatment for her claimed neck and back pain, but observed that it had been "primarily through emergency services with no evidence as

to an ongoing treatment or follow-up through a specialist or even general practitioner." (Dkt. 6 at 20-21). As such, Plaintiff's argument that "[c]ontrary to the ALJ's assertion," she "received . . . treatment at the emergency room on January 21, 2016 for chronic back pain" (Dkt. 11-1 at 13) relies on a misreading of the ALJ's opinion. The Court does not find that the ALJ cherry-picked the evidence of record.

Plaintiff also claims that there may be primary care records missing from Jefferson Family Medicine from April 2015 through 2017, based on her own testimony at the hearing that Jefferson Family Medicine was her "regular doctor." (*See* Dkt. 6 at 47; Dkt. 11 at 12-14). Plaintiff also notes that the record does not contain records from her OB-GYN. (Dkt. 11 at 14). However, when the ALJ asked Plaintiff's counsel at the hearing if there were additional records missing from the record, Plaintiff's counsel stated that there were not, adding that while there could be other emergency room records "out there," the records the ALJ had before him were "representative of [Plaintiff's] condition" at the relevant time. (Dkt. 6 at 39). The ALJ nonetheless gave Plaintiff's counsel 30 days after the hearing to submit any additional documents to supplement the record. (*Id.* at 75).

"Although the ALJ has an affirmative duty to develop the administrative record, the ALJ's obligation is not unlimited. Plaintiff cannot simply identify arguable gaps in the administrative record and claim that such gaps are a *per se* basis for remand." *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012). In other words, "[t]he mere absence of some medical records is insufficient to show that the ALJ failed in her duty or that reversible error occurred." *Jason C. v. Berryhill*, No. 6:17-CV-01106 (TWD), 2019 WL 1409804, at *5 (N.D.N.Y. Mar. 28, 2019) (quotation and original alteration omitted).

Instead, the relevant question is whether "(1) whether there was an obvious gap in the record that should have prompted the ALJ to seek additional information; and (2) whether the ALJ fulfilled his duty by making every reasonable effort to fill that gap." *Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *8 (W.D.N.Y. Aug. 15, 2018) (quotations omitted). "An ALJ has taken reasonable steps to complete the medical record when she asks claimant's attorney at a hearing if the medical records before her are complete, and the attorney answers affirmatively." *Jason C.*, 2019 WL 1409804, at *5.

Here, even assuming that there was an obvious gap in the record due to the allegedly missing records from Jefferson Family Medicine and Plaintiff's OB-GYN, the ALJ took reasonable steps to fill that gap. First, the ALJ asked Plaintiff's attorney at the hearing if there were any relevant additional outstanding records, and Plaintiff's attorney stated that there were not. Second, the ALJ nonetheless afforded Plaintiff's attorney 30 days to obtain and submit any supplemental records. This was adequate to satisfy any duty the ALJ had to further develop the record. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (finding that ALJ satisfied duty to develop the record where the plaintiff's counsel volunteered to secure additional records, the ALJ kept the record open to allow counsel to do so, and counsel ultimately advised the ALJ that there was nothing further to add to the record). For all these reasons, the Court finds no reversible error in the ALJ's assessment of Dr. Balderman's opinion.

## B.     Determination of Plaintiff's Physical RFC

Plaintiff's next argument is that, having rejected a portion of Dr. Balderman's opinion, the ALJ improperly relied on his own lay assessment of the medical evidence to determine Plaintiff's physical RFC. The Court is not persuaded by this argument. First, as the Court has already noted, the ALJ's ultimate RFC determination was consistent with Dr. Balderman's opinion, which contained only moderate postural limitations.

Second, while it is true that an ALJ is not a doctor and may not interpret raw medical findings, "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Keller v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019). This is such a case. As discussed above, the medical evidence of record regarding Plaintiff's back and shoulder pain demonstrates that these impairments caused Plaintiff little to no functional limitations. The Court agrees with the ALJ that limiting Plaintiff to light work afforded her the benefit of the doubt, in light of the "benign diagnostic imaging" and lack of any significant medical findings, as well as Plaintiff's largely intact physical activities of daily living. (Dkt. 6 at 21; *see also id.* at 51-60 (Plaintiff testified that she was able to care for and clean up after her children, go shopping, groom herself, and take her children to the park)). Under these circumstances, it was not reversible error for the ALJ to make a common-sense assessment of Plaintiff's physical RFC.

### C.     Other Requirements of Light Work

Finally, the Court finds no merit in Plaintiff's argument that Dr. Balderman did not opine on her ability to walk, sit, or stand, and so his opinion does not provide substantial evidence for the ALJ's conclusions as to her physical function. Again, as noted above, Plaintiff's physical impairments in this case were sufficiently minor that the ALJ was permitted to make a common-sense assessment of the associated limitations. In other words, even in the absence of Dr. Balderman's opinion, it was permissible for the ALJ to conclude that Plaintiff was capable of light work.

Further, the Court disagrees that Dr. Balderman did not assess Plaintiff's ability to sit, walk, or stand. Dr. Balderman performed a complete physical examination of Plaintiff, including assessing her gait, ability to walk on her heels and toes, stance, and ability to rise from a chair. (Dkt. 6 at 376). Dr. Balderman then concluded that the only limitations Plaintiff had were in repetitive bending and lifting, reaching, pushing, and pulling. (*Id.* at 378). The "absence of any limitation upon plaintiff's capacity to walk or stand by [the] consultative examiner" is evidence that Plaintiff was capable of "a good deal of walking or standing as encompassed within the definition of light work." *Hawk v. Comm'r of Soc. Sec.*, No. 18-CV-754SR, 2020 WL 1307276, at *5 (W.D.N.Y. Mar. 19, 2020).

In sum, the Court finds the ALJ's assessment of Plaintiff's physical RFC adequately supported by the evidence of record, and does not discern any other basis for remand of this matter. Accordingly, the Commissioner's denial of Plaintiff's application for benefits must be upheld.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: April 24, 2020
Rochester, New York

